Good morning everyone We have five cases up for oral argument this morning Our first case is Ferguson vs. Aon Risk Services Appeal number 24-2017 Good morning, Mr. Luskin. Good morning, Your Honors May it please the court, Scott Luskin for Elidence Ferguson Aon committed more than once to provide notice of Clarendon's claim to SCB Radon and their insurance. Yet Aon, at least twice, did not follow through on its commitments, failing to use its judgment and expertise to properly communicate with the carriers. Aon merely provided notice to Gulf, the primary carrier, while failing to timely notify access carriers Ersic and Reliance. These all-but-admitted failures sounded both contract and tort. Yet the district court committed a reversible error in allowing Aon to avoid liability to plaintiffs who lost millions because of Aon's action or I guess inaction. Aon should not be able to shirk responsibility. Plaintiffs are both third-party beneficiaries of the notice agreement and can sue Aon in court directly for the broker's professional negligence. I respectfully request that the court reverse both orders below so the plaintiffs can try their case to a jury. The court made several reversible errors in both the contract and the tort claims. For the contract, there were two key errors. First, the trial court applied the wrong standard to the third-party beneficiary analysis and then weighed the evidence, which Aon does again in its brief by talking about how the evidence can be better understood. Mr. Luska, before we even get to that, I'm having a hard time seeing, especially for the 1999, what you claim are contracts, how the letters from Ferguson to SCB and that were then faxed to Aon, how those constitute a contract? Sure, Your Honor. As this court held in Hernandez, an implied agreement can be any series of documents that sort of lay out some requirements and concepts here. And in that case, merely looking at websites and student handbooks and other things of that nature constituted a contract. What's the offer? Well, in this particular case, it's more of a request to discharge a duty, which is exactly what 302 Comment D discusses, right? So we have a... But again, what's the offer? What kind of benefit are they offering and accepting? Well, Radon SCB is asking for assistance and Aon is looking to maintain the business of SCB and Radon, right? That is the offer and acceptance. And in fact, there's not really even a consideration requirement under 302. One of the examples is you know, C asserts that A owes him $100. A does not owe this money or even think he owes this money, but rather than engage in litigation and in order to obtain peace of mind, A secures a promise from B to pay C $100. C is an intended beneficiary. There's no discussion about offer or acceptance here. It's just the request and then the acceptance to discharge a duty constitutes the contract. And we have the exact same thing here, Your Honors, in the letters, right? We have... Aon doesn't even dispute that we have the first agreement, which is Clarendon requesting that SCB and Radon provide notice. And then we have the obvious admissions by Aon where they said, yes, we got this letter. We read Ferguson's letters. We read the instructions. We understood it was our duty and our agreement to provide notice to the carriers. We just screwed up. We only provided it to one, not the others. And I think that is really the key here. I'm not sure they agree to that, but... Well, I don't know if they agree, but they did admit it. They're... Mr. Hannington, who's the one that actually sent the documents just to Gulf, I believe he testified that he committed to giving notice to the carriers plural. And everybody understood that the concept was to give carriers up and down the line. They even said that back in 2009. But even assuming that collection of communications, letters, documents, understandings from 1999 constituted a contract, the cases you've provided us about intent to benefit are where the parties have expressly stated an intent to benefit a third party. And here it seems with that collection of documents, Aon, assuming it's a contract, was intending to benefit Radon with what you say. It's this promise to communicate. It's this duty to communicate. Does that distinction with the cases even you've cited matter for us? So, I think that the big issue, and this is what the trial court focused on as well, the big issue here is that the Supreme Court of Illinois says the promisee must intend to benefit. And here we have the promisee intending to benefit. Not only do we have the Sheehan Declaration where he says, yes, we intended to benefit our largest client, make them happy, and make sure there was insurance coverage. But the letters, the communications to Aon themselves, point to the fact that Clarendon is specifically asking for this information to be provided. And then again, Aon agrees that it read the letters before, the Ferguson letters, before sending anything to Gulf. Again, it just screwed up. So, in the case law we have, it is this concept of does the promisee intend to benefit. And here, clearly, Clarendon and Radon, there's at least an issue of fact that they intended to benefit Clarendon and then ultimately my clients. And I think even on this record, Aon, as one of the world's largest and most sophisticated brokers, would understand that the purpose of providing notice is to preserve policy rights. And in this particular case, this is a policy that was procured by Aon that paid directly to the claimant, right? It wasn't an indemnity policy. Preserving rights is separate than the question of a contract or an express intent to benefit a third-party beneficiary. While they may understand those concepts, they are not directly linked. Well, I think they provide a fact issue. And again, all we need here for summary judgment is a fact issue. First, what is your strongest argument that the 1999 letters that were exchanged or communications that were exchanged, that there is an express intent in there to benefit Clarendon? What's your strongest argument? Our strongest argument? So what language in there? So the language in there, so the letters, the Ferguson letters, specifically state we're going to look to Radon and its insurers to cover this loss and we expect you to provide notice, right? So that piece comes there. Then in the faxes themselves, one of the faxes specifically says at Clarendon's request, we're asking you to do this. And then the other ones are this concept of even there's a standstill agreement discussion, right? That could only possibly benefit Clarendon as the plaintiff, right? So there's all these pieces of information that provide us at the very least a fact issue as on summary judgment to get into whether A, there's a contract, and B, that there's an intent, again, from the promisee here, SCV Radon, to benefit Clarendon. What's the strongest evidence that Aon had an intent to benefit Clarendon? Well, I don't know. First of all, I guess I don't know that Aon even needed intent to benefit Aon. Sorry, Aon intended to benefit Clarendon because again, the Supreme Court in Illinois says at least the promisee doesn't need to be both parties. But regardless of that,  read the letters, says they read the letters and committed to do what was there. And it doesn't have to be just for Clarendon's benefit. It has to be, it can be a partial benefit. It can be both benefiting its client and Clarendon. And I think we have here, again, based on the documents together, at least a fact issue to show that Aon also, in addition to the promisee who clearly, right, we've got the Sheen Declaration and the faxes, clearly wanted to benefit Clarendon. I think there's at least a fact issue on whether or not SCV, Aon also was understanding and could intend to want to have Clarendon be preserved. Otherwise, they wouldn't be doing their job and they would fail to be a worthwhile broker to SCV Radon, may not get the business again. If we disagree, if we disagree with you on the express intent issue, if we don't think there's any evidence to create a fact on that, are you also arguing that you can rely on the duty-owed test alone to establish third-party beneficiary status? Yes. I think the duty-owed test is separate than the intent-to-benefit test, right? Illinois follows the restatement and the duty-owed test appears to be a separate way to show that you're intending to benefit someone. All of the case law that you cited for the duty-owed test assumed that there was already a third-party beneficiary and used it to determine if the third-party beneficiary's rights had vested, not to determine third-party beneficiary status in the first instance. How do you respond to that? Well, Your Honor, obviously this doesn't come up all that often, but I respond to it by saying the Restatement 302 is the law in Illinois, and Restatement 302D gives many examples where you can have the discharging of duties apply without any further discussion, right? There's four examples we cited in our papers, you know, even one, which was number nine, AOC $100, not knowing of any such debt, D promises to pay A $100 to C, and then we've got an intended beneficiary. That's all that's required under the Restatement, and yes, the case law doesn't quite discuss that, but it does parrot and follow, and in fact in Carson Peery Scott, the Illinois Supreme Court there, again, was discussing the Restatement as the law of the land in Illinois for contracts. I know you're into your rebuttal time, and perhaps the presiding judge will take that into account, but I need to ask you about professional negligence before you return. Sure. There's a case neither party cites, Santa Rosa. I don't know if you're familiar with it. Santa Rosa Mall LLC versus AON Risk Services. It's 223 Illinois Appellate 1st, 221-352. There, the Illinois Appellate Court ruled that the plaintiff, the plaintiff was a shopping mall, couldn't bring a professional negligence claim against AON for AON's failure to properly manage insurance for the plaintiff's commercial tenant. Okay, and so the court is saying the mall can't sue AON for the mall's losses because, quote, nothing in Illinois law suggests that insurance brokers have a duty to protect third parties from foreseeable harm flowing from the conduct of their clients, and so you can imagine why I've mentioned that insurance brokers don't have a duty to protect third parties from foreseeable harm flowing from the conduct of their clients, and I want to know how you square that holding with your professional negligence theory. I won't expect you to answer now. You say you're not familiar with the case, but I'll try. I'll try real quick without reading the case, but I think the concept is that sounds like the client may have done something wrong, at least the quote you just gave us, and therefore preventing the professional negligence of whatever's happening in that particular instance is the problem. Here, the professional negligence is the understanding and the duty that they took on, that they voluntarily took on, to provide notice of the claims, and that is enough to take us outside of the Mormon doctrine, and in fact, in a case that AON cited, Pelham v. Reischheimer, which is an Illinois Supreme Court case, it's one where we've got an instance of attorneys in a divorce action, and the attorney was supposed to get insurance in the contract for the husband, has to stay there, and the court, while they denied the claim of the children in that particular instance, saying, hey, we should have gotten the malpractice claim against the attorneys, the Illinois Supreme Court said the following, We believe a different situation would confront us if the complaint had alleged sufficient facts to show that the defendant had undertaken a duty to notify the insurance company or the husband's employer of the provision in the divorce decree. In that situation, the attorney may have had a duty to exercise reasonable care because his client and the plaintiffs, which were the children, herein could have justifiably relied on that undertaking. That's exactly what we have happening here, Your Honors, and that's at Pelham at 549. I'll reserve the rest of my time. Thank you. Thank you. Mr. Wilcox. Thank you, Judge St. Eve, and may it please the court. Jason Wilcox on behalf of AON. The common problem, as the court has picked up on, that cuts across all of Appellant's theories is that Clarendon was not AON's client and had no business relationship with AON. That leaves Appellant's contract claim on shaky legal ground because they cannot satisfy the very difficult standard for third-party beneficiary status. There's simply no agreement between AON and SCB that expressly made Clarendon the direct beneficiary of a promise to notify SCB's insurers of any potential claims Clarendon might have. SCB asked AON to notify the insurers to protect its interests, not out of some duty to Clarendon. And I think you can see that when you look at the 1999 letters, Judge St. Eve, that you were talking about. All the letters say is please put the underwriters on notice and obtain their approval if necessary for a standstill agreement, which would benefit all the parties because Clarendon at that point was in the dispute with another party in this reinsurance scheme, and they wanted to settle that dispute before there was any litigation between SCB and Clarendon. So, of course, SCB is interested in doing that and wants to protect its interests. And you don't see anything in there that has the express language that Illinois law requires. There's no express provision that identifies Clarendon as a third-party beneficiary, and there's nothing that's such a strong implication as to be practically an express requirement, which is what this court has said was required in Coteny and what Illinois courts have said over and over again is required to establish third-party beneficiary status. Plaintiffs have submitted deposition testimony, affidavits from Radon supporting their claim that Radon and Aon had a contractual relationship and intended that Clarendon benefit. Why isn't that body of stuff enough just to create a fact issue? So two responses, Your Honor. The first is I think the only thing they've really submitted is the Sheehan Declaration, which is at pages 486 to 87 of the Supplemental Appendix, and all that Mr. Sheehan says in his declaration is that they understood that Clarendon wanted Aon or wanted SCB to notify the insurers so that the insurance would be there. They don't show that there's any contractual agreement to put any duty on SCB to make that, which would be necessary here to have a third-party beneficiary relationship. And even if there was some understanding between Clarendon and SCB, there was no understanding between Aon and SCB. The Clarendon was going to be any third-party beneficiary of that relationship. But more importantly, what the Illinois courts have said is that you need to point to express evidence of express terms in a contract to establish third-party beneficiary status. That was the Goldfarb decision from the Illinois Court of Appeals. And when you look at decisions like Carlson and Harleysville from the Illinois Court of Appeals, they say that things like surrounding circumstance can't substitute for express language in the contract. You need to have actual language in the contract that shows you that there is a third-party beneficiary relationship that's intended, and deposition testimony after the fact, declaration submitted decades later, can't substitute for that. In 96, did Aon have any agreement with SCB as its broker? I know they sent the scope of proposal and that's what's been the focus of the litigation here, but did they enter into any kind of a contract or agreement based on that scope of proposal? I'm not aware of one that's been entered into, Judge St. Eve, and to the extent that one exists, I haven't seen it in the record here. Is that standard practice for the insurance industry? It just seems odd that there was a scope of proposal and no acceptance or agreement of agreeing to exactly what the terms would be. So I'm not sure what standard practice, although what I will say, Judge St. Eve, is when I think about my own experience with my insurance brokers, when I go and get something like my auto coverage or my umbrella coverage, oftentimes I call them up, they get me insurance. We never sign an express contract. Between us, it's just kind of an understanding that they're going to work on my interest. But to the extent that there was a contract here, obviously that's a problem for appellants, not for us, because they need to be able to show express provisions in the contract that would create that relationship. And I think that if you want to look at something like the 1999 agreement, to focus on that again, the best you can say there is it's not a contract. At most, maybe it's referring and asking AON to carry out some contractual duty under some contract that we don't have and we can't see, and you'd need, if you wanted to have a third-party beneficiary relationship, to look at the terms and the language in that agreement, which is simply not in the record. So that alone shows that not only is there not any express language that would make them a third-party beneficiary, but as you picked up on, Judge St. Eve, there's also just simply not a contract reflected in those 1999 documents. And the same is true for what they call the 1996 contract between AON and SCB. So that consists of three documents. The first is what you were just referring to, Judge St. Eve, the proposal. The second is an insurance application, and the third is a confirmation that AON sent to Lloyds, letting Lloyds of London, confirming that Lloyds of London had underwritten the policy. If you look at the proposal, it really is just a pitch book. There's, for example, no terms there. It doesn't look like a term sheet for a contract. It's just, we're AON, we're great. If you look at, you know, page one of that, it's just introduction to AON. Page two of that document, which is at 109-13 of the district court docket, is why would you want to hire AON in general? AON then goes on and talks about its client list, and there's just simply no terms there. And most importantly, it's completely silent about third parties. It doesn't mention anyone like Clarendon, any class that Clarendon would belong to, and instead talks about how it could benefit SCB, to have a claims administration process that's good for SCB, create an insurance tower that would be beneficial to SCB. But the 1997 documents that follow that 1996 proposal, you are right, it's a proposal, that, in the eyes of a reasonable jury, could seem like it's some sort of acceptance because it's Radon saying, confirming that it purchased the insurance that AON recommended. And so it's showing Radon accepting the offer on the terms outlined in that 1996 scope of work. Well, so two responses, Your Honor. The first is, I don't think there are any terms that you can accept in that 1996 statement of work. There's no, this is what we'll do, here's what the consideration will be, any of that. It's, again, just generalized. Here's AON, here's what we do. But even if you did want to say it was an acceptance, you'd still have the problem of there was no term that's in there that is, we will take on a duty to notify and we will make your insured SCB, the downstream, your downstream customers, a third-party beneficiary of any notice requirements that we may agree to between us. So even if you think that there is a contract that was created by the 1997 acceptance, and I'm assuming by that you mean where they appointed AON as their broker, there still would be no third-party beneficiary under the very demanding standard, as this Court has said in Quinn, where you have to have this express language. There's simply nothing in the proposal that has that. It's silent about it. The same is true of the confirmation that you can see at pages 311 to 313 of the supplemental appendix. It's completely silent about third-party beneficiaries. It says, here's where notice needs to go. SCB, if you want to tell Lloyd's that you have a claim that you want to bring, it doesn't even say AON has a right to be providing the notice, and it's completely silent about any third parties, Clarendon, anyone else. So that can't create a third-party beneficiary either. And then if you look at the application, which is at 283 to 85 of the supplemental appendix, that does mention Clarendon and that SCB is noting that one of its largest clients is Clarendon. But as the Illinois courts have said in decisions like Carlson, mere reference is not enough to create a third-party beneficiary. That's not the type of express provision that you need. And more importantly, that's an application that SCB submitted to Gulf, not to AON. So to the extent that that's a contract in creating anything, it's creating a contractual relationship between SCB and Gulf, not between SCB and AON that would impose any contractual duty on AON, although if you look at 266 to 67 of the supplemental appendix, their own witness, Joseph Jacobs, admitted that the application was not a contract. And so I don't think that when you look at this, whether you want to think about it in terms of a contract or you want to think about it in terms of meeting the express requirements for a third-party beneficiary, there's just any evidence here that would allow a reasonable jury to infer that they had made something that rises to the level that you need to get to third-party beneficiary status. Whether you look at the 1990, what they call the 1999 agreement, or you look at what they call the 1996 agreement. If we want to talk about the duty owed test, you're exactly right, Judge St. Eve, that no Illinois court has ever applied the duty owed test as something that's separate from the intent to benefit test. As this court said in Quinn, Illinois follows the intent to benefit test. Even if you want to look at section 302 of the restatement, as my friend on the other side references, the first thing that the restatement says is it's only appropriate if it will effectuate the intent of the parties. And then you go on to look at the intent to benefit test. Illinois has been very clear about how you decide whether someone, whether the parties in their contract had an intent to benefit someone. And if there has to be an express provision that identifies the third-party beneficiary by name or by class, or has such an overwhelming and compelling implication that it's practically expressed. In the words of Goldfarb from the Illinois Court of Appeals, it has to be express evidence of express terms. So that's not enough. And that differs. Illinois is different from a state like they cite, Minnesota, where you have cases like Twin City Construction, where it says there are two alternative tests. There's the intent to benefit test and there's the duty owed test. And you can satisfy either one. There's not a single Illinois decision that says that there's an alternative to the intent to benefit test and it's the duty owed test. Is that inconsistent with the restatement? I don't think it's inconsistent with the restatement. For two reasons. The first is because of that first sentence in the restatement that I noted, which essentially requirement one is you have to have an intent to benefit. And the second is the restatement then goes on to say there's two situations where you have an obligation. One is when it's to satisfy an obligation to pay money to the beneficiary. That doesn't sound like the duty owed test they're applying because there's no obligation that Aon here has here to pay money to anyone. It's about a notice requirement. And the second one is that the promisee intends to give the benefit of performance to the beneficiary. And Illinois courts have said that where you look to understand that intent is it has to be in the contract. That's the Zurich case from a couple of years ago from the Illinois Court of Appeals. And the Illinois Supreme Court said that in the Resnick case all the way back in 1980. So for more than 40 years, that's been how you show whether there was any intent, whether it's by the promisee, by Aon, or by them combined to benefit. It's in the express language of the contract. And I think the best evidence in the duty owed test isn't some separate test they can satisfy. It's their own case, Swavely, which is the only Illinois case as opposed to district court case that they cite in support of their duty owed theory. The first thing that happened in Swavely was the court said we need to figure out if there was an intent to benefit. And it laid out all the standard intent to benefit principles that you see in every other Illinois case. The requirement that there's an express provision in the contract. It invoked the strong presumption that Illinois has that parties enter into contracts only to benefit themselves. And then only after it went through that and said, yes, applying the standard intent to benefit test, we see there was an intent to benefit the wife here. There it was very clear because the contract said if the husband dies and his commissions haven't been paid, the wife will get the commissions. Then said, well, now we go on and we apply the duty owed test to see if whether the company can nonetheless back out of that and apply duty owed to decide are you an intent, you know, what are you, don't you beneficiary or not? I'm still stuck on an earlier question, which is I know you referenced your own personal experience with your personal one on one insurance contracts, but how is AON operating at this level? Worldwide brokerage. These are multimillion dollar contracts, multimillion dollar business is doing for clients with no actual contracts. Well, so I think AON probably does have contracts. They're just not in the record for SCB. I mean, we can see a later contract that's in the record at Appendix 396 and there AON expressly disclaimed that there'd be any third party beneficiaries to the agreement. For whatever reason, probably because the passage of time, because this lawsuit was filed more than 20 years after the relevant events. We don't have that contract in the record here. But again, under the Illinois cases, that's a problem for the appellant. That's not a problem for AON because they need to be able to show that the contract exists. That's exactly what Illinois courts have said in decisions like Barney, where they said if you don't have the contract, then you can't show that someone was a third party beneficiary because you need the appointment to express language that showed that there was an intent to create you as a third party beneficiary. I assume that was subject of discovery and request for contracts. I have to assume it was, too, Your Honor. And I haven't heard any argument in the briefing from my friend on the other side that there was something ill intent by AON that AON intentionally withheld that. And I'm certainly not aware of AON doing that in any way. So, yeah, there's simply no contract here between SCB and AON that shows exactly what the relationship was in terms of notifying anyone. And that means, necessarily, there's nothing showing that they had a contractual written understanding that Clarendon or anyone like Clarendon would be a third party beneficiary of whatever notice, promises, or agreements that they had between themselves. In my last minute, let me quickly address the tort claim. So I am also unfamiliar with the case that you mentioned, Your Honor. But I will say it sounds very similar to this court's decision in MG, where MG also held that insurance brokers do not have an obligation to non-clients of the brokerage. And that's consistent with Illinois general law in decisions like Kafka, which was an attorney and an accountant, and the Pelham case, which my friend on the other side mentioned, which was an attorney, where the Illinois courts have been clear that you don't need to have, that generally professional negligence claims don't span to non-clients because you're not in a professional relationship with those companies. You don't have that understanding. And the other problem for them is, of course, even if you thought that there could be a duty that was owed to non-clients, which would be expanding Illinois law, this court in Landmark held that there's no duty to provide, the brokers have no duty to provide notice of claims. The only way in which they can ground a duty to provide notice is through a contract. And if you're finding that duty grounded in a contract, then you're in the world of the economic loss doctrine, because that's exactly what the doctrine exists to do. So unless the court has any further questions, thank you very much. Thank you, Mr. Wilcox. Mr. Luskin, you have a few minutes left for rebuttal. Thank you, Mr. Court, again. I wanted to address a couple different things raised by my colleague across the aisle here. First, this concept of there could be this mystery hidden contract. This, as Judge St-Yves asked, this was the source of discovery, and I think this concept is it's an implied contract. They make a proposal, which was ultimately accepted by hiring Aon to broker policies, and they got paid commissions. It's pretty simple, and it happens all the time. And I don't know if they have other agreements. I think this 2001 agreement that my colleague on the other side mentioned was a special agreement to deal with certain things because claims were going so nuts at that point in time. But before that, we had a proposal that was accepted. And my client, Joe Jacobs' statement that a proposal is not a contract, all by itself doesn't mean anything. You know, if a proposal is ultimately accepted, well, then it becomes a contract. And in fact, the proposal itself talks very specifically about duties that Aon's going to take on. At docket 109.13.10, it states, building an efficient and effective claims management process begins with a solid foundation. That foundation begins with a day-to-day claims management role, which is assumed by our brokers for each of their accounts, assumed for each of their accounts. That's very clear language that they're taking on this claims management role, and ultimately, we get to the concept that when they're in that role, they get asked to provide notice, and they fail to do so, and it should have been a good plan. On the 302, you know, money is not a requirement, as my colleague said, for 302 to apply. Again, one of the examples is number five. C is a troublesome person who is annoying. A dislikes him but believes the best way to obtain the freedom of annoyance is to present a gift, and he gets a gift of cigars to just pacify him. And if the person is discharging the duty of providing the gift, that's enough, again, to make an intended beneficiary here. I see I'm out of time. Thank you, Your Honors. I appreciate your time. Thank you, Mr. Luskin. Thanks to both counsel, the court will take the case under advisement.